IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>WILLIE HUBBARD,<br><br>    Defendant. | CRIMINAL ACTION<br><br>NO. 1:15-CR-146-3-WSD-CMS |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

In this case, the Government has brought an eleven-count indictment against four individuals for alleged bank fraud and identity theft relating to certain information obtained from JP Morgan Chase Bank and Credit Union of Southern California. (Doc. 1). Defendant Willie Hubbard ("Defendant") is charged in seven of the counts with the following: conspiracy to commit bank fraud (Count 1); three counts of bank fraud (Counts 2, 3, and 5); and three counts of aggravated identity theft (Counts 7, 8, and 10). There are two motions pending before the Court: (1) Defendant's Motion to Sever Defendants (Doc. 84); and (2) Defendant's Motion to Suppress Statements (Doc. 83).

## I. MOTION TO SEVER DEFENDANTS

In his Motion to Sever Defendants, Defendant Hubbard asserts that there may be a <u>Bruton</u> problem because certain of his co-defendants may have given statements that incriminate him. (Doc. 84 at 2). In response, the Government states that the motion should be denied without prejudice because, to date, the Government is unaware of any statement by a co-defendant in this case that incriminates Defendant. (Doc. 92 at 1). The Government states that in the event it learns of such a statement that it intends to introduce at trial, the Government will notify defense counsel. (<u>Id.</u>). Defendant has not filed a reply brief, which indicates to me that he does not disagree with the Government's position that the motion should be denied at this time without prejudice. Accordingly, I recommend that Defendant's Motion to Sever Defendants (Doc. 84) be **DENIED WITHOUT PREJUDICE**.

## II. MOTION TO SUPPRESS STATEMENTS

### A. BACKGROUND

Defendant has also filed a Motion to Suppress Statements alleging that certain statements he made during an interview with United States Secret Service agents on October 31, 2013 were involuntary custodial statements requiring <u>Miranda</u> warnings. (Doc. 83). On January 11, 2016, I conducted an evidentiary

hearing on this motion. (Doc. 119). At the hearing, the Government presented one witness, Michael Butts, who was working as a special agent ("SA") for the United States Secret Service in Atlanta, Georgia during the relevant time. Defendant did not call any witnesses.

SA Butts testified that in October 2013, he was the lead case agent in a fraud investigation involving a group of people that included Defendant. (Doc. 119 at 9-10). A couple of days before the October 31, 2013 interview, SA Butts had contacted Defendant by telephone, and they set up an interview at the Secret Service field office in Atlanta. (Id.). SA Butts could not recall specifically what he told Defendant on the phone, but SA Butts testified that he did not think that he went into great detail on the phone, i.e., he "may have given [Defendant] some kind of general guidelines as far as his business accounts or related to his business." (Id. at 10).

On October 31, 2013, Defendant reported for the interview at the Peachtree Summit Federal Building, a standalone secured federal building in Atlanta, Georgia. (Doc. 119 at 11). SA Butts testified that he did not know how Defendant arrived at the interview, but neither he (SA Butts), nor any other law enforcement officer, brought Defendant to the interview. (Id.). SA Butts testified that the interview was conducted on the 30th floor of the building; that he was not

present at the building entrance when Defendant arrived, but that Defendant would have had to present identification and pass through security to enter the building; and that upon entering the building, Defendant would have been on the second floor. (Id. at 12). SA Butts could not recall whether he went down to the second floor to escort Defendant to the 30th floor or whether Defendant took the elevator by himself to the 30th floor. (Id.). SA Butts also could not recall whether, upon meeting Defendant, he asked to see Defendant's identification. (Id. at 13).

Another agent, SA James Cox, also was present at the interview. (Doc. 119 at 13). SA Butts could not recall how he and SA Cox were dressed but testified that they probably were both in business attire, but they might have been wearing polo shirts with khaki pants. (Id. at 14-15). SA Butts did remember that both he and SA Cox were armed with pistols, but he was unable to say whether the guns were visible to Defendant because he could not remember whether he and SA Cox were wearing jackets. (Id.).

The conference room where the interview took place was in a secure area in a corner conference room on the 30th floor of the building. (Doc. 119 at 15). According to SA Butts, the conference room was large, approximately the length of my courtroom. (Id.). There were two doors to the conference room, which were both closed during the interview to prevent distractions from people walking back

4

and forth outside the room.  (Id. at 16).  The doors were not locked, and Defendant's path to the doors was not blocked in any way.  (Id. at 17-18).

The interview began with SA Butts thanking Defendant for coming in to speak with the agents.  SA Butts testified: "I told him he's not obligated to speak with me. He doesn't have to speak to me. He can leave as he chooses.  And I would have basically just told him—the gist of what I told him was he didn't have to be there."  (Doc. 119 at 18).  When asked if he ever told Defendant that he was under arrest, SA Butts testified, "I don't think arrest ever came up in the conversation.  There wouldn't have been any reason for me to bring up arrest in any manner because I'm wanting to speak with him and get his side of the facts and events."  (Id. at 19).  SA Butts testified further that he and SA Cox did not unholster or even touch their pistols, and they did not threaten Defendant in any way; they did not touch Defendant, other than to shake his hand.  (Id. at 19-20).  SA Butts testified that they did not give Defendant Miranda warnings because, from SA Butts's perspective, Defendant was not in custody. (Id. at 20).

During the interview, which lasted between 30 and 45 minutes, the agents and Defendant were calm; they never became confrontational.  (Doc. 119 at 20, 22).  SA Butts asked the questions, and SA Cox took notes.  (Id. at 21).  SA Butts asked questions about Defendant's business bank accounts, and Defendant

5

answered the questions. (Id. at 26).  At some point during the interview, Defendant said that he thought he needed an attorney.  (Id. at 21, 26-27).  SA Butts testified that after Defendant mentioned an attorney, they asked no more questions and ended the interview.  SA Butts told Defendant that if Defendant got an attorney, to let SA Butts know who it was so that they could speak.  (Id. at 22, 35).  At that point, SA Butts escorted Defendant to the elevator, and Defendant left the building. (Id. at 23).

### B. DISCUSSION

Defendant argues that the statements he made during the interview should be suppressed for two independent reasons.  First, Defendant argues that he was effectively in custody during the interview, such that the agents' failure to advise him of his Miranda rights renders his statements inadmissible.  Second, he argues that his statements were not voluntary. As explained below, I find both these arguments to be meritless, and I recommend that the Motion to Suppress Statements be DENIED.

*1. Whether Defendant was In Custody*

Once in custody, a suspect may not be interrogated unless he is advised of his Miranda rights, he demonstrates that he understands them, and he voluntarily waives them, either explicitly or implicitly. See Yarborough v. Alvarado, 541 U.S.

652, 661-63, 124 S. Ct. 2140 (2004). Custody is established if, in light of the circumstances of an interrogation, a reasonable person would have felt that he was not at liberty to terminate the interrogation and leave. See id., 541 U.S. at 663, 124 S. Ct. 2140. The test is objective: whether a reasonable person in the defendant's position would feel a restraint on his freedom equivalent to that normally associated with formal arrest. See Berkemer v. McCarty, 468 U.S. 420, 441, 104 S. Ct. 3138, 3151 (1984); United States v. Torkington, 874 F.2d 1441, 1445 (11th Cir. 1989). The Eleventh Circuit considers several factors in applying this objective test, including whether the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled. See United States v. Street, 472 F.3d 1298, 1309 (11th Cir. 2006). No particular fact in the "custody" analysis is outcome determinative; rather, the court simply weighs the totality of the circumstances. United States v. Lall, 607 F.3d 1277, 1284 (11th Cir. 2010). Defendant carries the burden of showing that he was in custody, and therefore, that Miranda warnings were necessary. See United States v. de la Fuente, 548 F.2d 528, 533 (5th Cir. 1977); United States v. Peck, 17 F. Supp. 3d 1345, 1353-55 (N.D. Ga. 2014) (discussing the applicability of de la Fuente).

In support of his contention that he was effectively in custody, Defendant points to the following facts:

- He was "directed" by a U.S. Secret Service agent to come to a federal building and answer questions.

- He had to produce identification two times upon entering the building.

- He had his person and his belongings scanned for weapons.

- The interview took place in a secure conference room on the 30th floor, "behind closed doors" and "away from all public spaces and access."

- He was interrogated by two federal agents who were "armed with very large guns."

(Doc. 120 at 6). According to Defendant, these facts would make a reasonable, innocent person believe that he was not free to leave, meaning that Defendant should have been given Miranda warnings. (Id. at 6-7).

Analysis of the circumstances presented in this case leads to a conclusion that Defendant has not carried his burden of establishing that he was in custody, for Miranda purposes, during his interview. The undisputed evidence is that Defendant agreed to be interviewed and arrived at the interview without the assistance or involvement of law enforcement. SA Butts opened the interview by thanking Defendant for agreeing to be interviewed and telling Defendant that he

was free to leave at any time, "as he chooses." The tone of the interview was calm, and it never became confrontational. The agents did not touch Defendant, brandish their weapons, or prevent Defendant from leaving the room. When Defendant indicated that he wanted to speak with a lawyer, the questions ceased, and Defendant was allowed to leave. Defendant presented no evidence of any threats, coercion, or deception on the part of law enforcement. To the extent Defendant argues that there was something custodial or coercive about having to present identification and go through security screening at the federal building, those are simply the procedures that any person entering the building must undergo. There is no evidence that the security procedures were aimed at Defendant directly in an effort to intimidate him. In sum, there is no evidence to support Defendant's argument that a reasonable person in his position would have felt that he was subject to a restraint on his freedom of movement akin to a formal arrest. Because Defendant was not in custody when he made the statements to the agents, Miranda warnings were not required. Accordingly, this basis for Defendant's motion to suppress is without merit.

   2. *Whether Defendant's Statements Were Voluntary*

"[A] confession, in order to be admissible, must be free and voluntary; that is, [it] must not be extracted by any sort of threats or violence, nor obtained by any

direct or implied promises, however slight." Bram v. United States, 168 U.S. 532, 542-43, 18 S. Ct. 183, 187 (1897) (citations omitted).  The focus of the voluntariness inquiry is on whether the defendant was coerced by the government into making the statement.  Colorado v. Connelly, 479 U.S. 157, 170, 107 S. Ct. 515 (1986) (citing Morah v. Burbine, 475 U.S. at 421, 106 S. Ct. at 1141) ("The relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception.")).  The issue of voluntariness is determined by examining the totality of the circumstances, and the burden is on the Government to establish, by a preponderance of the evidence, that a challenged confession was voluntary.  See Lall, 607 F.3d at 1285.

Defendant argues that his statements were not voluntary because he was "held in an intimidating custodial condition and deprived of his liberty by the United States Secret Service for approximately 45 minutes."  (Doc. 20 at 9).  Defendant argues that even though SA Butts promised that Defendant could leave after the interview, the promise was "inherently coercive" because it "only had meaning when it becomes a reality."  (Id.)

Contrary to Defendant's argument, and as discussed above, there is no evidence before me to indicate that Defendant was "held" in the conference room

10

or that he was in an "intimidating custodial condition" or that he was "deprived of his liberty" at any point during the interview. As discussed above, SA Butts provided undisputed testimony that he told Defendant that he was not obligated to speak with the agents and could leave "as he chooses." Defendant was not handcuffed or restrained during the interview, and everyone spoke in calm, non-confrontational tones. There is simply nothing in the record to suggest that Defendant was coerced, threatened, or intimidated into speaking with the agents, or that the agents made any promises to induce Defendant to talk. The fact that Defendant did indeed leave after SA Butts stopped the interview due to Defendant requesting an attorney shows that Defendant had the ability to refuse to answer questions and that he was aware of his right to refuse to answer questions. Based on the totality of the circumstances and the evidence presented at the hearing, I conclude that the Government has carried its burden of proving that Defendant's statements to the agents were voluntary. Therefore, this second basis for Defendant's motion to suppress also is without merit.

### III.   CONCLUSION

For the foregoing reasons, I recommend that Defendant's Motion to Sever Defendants (Doc. 84) be **DENIED WITHOUT PREJUDICE** and that Defendant's Motion to Suppress Statements (Doc. 83) be **DENIED**.

I have now addressed all referred pretrial matters and have not been advised of any impediments to the scheduling of a trial. Accordingly, this CASE is CERTIFIED READY FOR TRIAL.

IT IS SO ORDERED, this 13th day of April, 2016.

*[signature]*

CATHERINE M. SALINAS
United States Magistrate Judge